[15 NE3d 307, 991 NYS2d 552]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NATURE G. FINCH, Appellant.

Argued January 16, 2014; decided May 13, 2014

## POINTS OF COUNSEL

*Hiscock Legal Aid Society*, Syracuse (*Philip Rothschild* of counsel), for appellant. The charge of resisting arrest was insufficient as a matter of law because police knew that Nature Finch was an invitee of a tenant, his trespass arrest was for being at the tenant's apartment complex, and the only basis for that arrest was a police stay-away order to Mr. Finch that police had no authority to issue. (*People v Scott*, 26 NY2d 286; *Zwerin v Geiss*, 38 Misc 2d 306; *People v Graves*, 76 NY2d 16; *People v Munafo*, 50 NY2d 326; *Sky Four Realty Co. v State of New York*,

134 Misc 2d 810; *People v Konikov*, 160 AD2d 146; *People v Brozowski*, 53 AD2d 706; *People v Messina*, 32 Misc 3d 318; *People v Leonard*, 62 NY2d 404; *People v Peacock*, 68 NY2d 675.)

*William J. Fitzpatrick, District Attorney*, Syracuse (*Joseph Centra* and *James P. Maxwell* of counsel), for respondent. The police officer had a reasonable belief that defendant was committing a crime when the officer arrested defendant on May 27, 2009, and thus the People presented sufficient proof that defendant was guilty of resisting arrest. (*People v Gray*, 86 NY2d 10; *People v Hines*, 97 NY2d 56, 97 NY2d 678; *People v Hawkins*, 11 NY3d 484; *People v Bynum*, 70 NY2d 858; *People v Sweeney*, 15 AD3d 917; *People v Gonzalez*, 99 NY2d 76; *People v Contes*, 60 NY2d 620; *Jackson v Virginia*, 443 US 307; *People v Jensen*, 86 NY2d 248; *People v Peacock*, 68 NY2d 675.)

**OPINION OF THE COURT**

SMITH, J.

We hold that, where a defendant has unsuccessfully argued before trial that the facts alleged by the People do not constitute the crime charged, and the court has rejected the argument, defendant need not specifically repeat the argument in a trial motion to dismiss in order to preserve the point for appeal. We also hold that the argument defendant makes here has merit, and requires reversal of his conviction for resisting arrest.

## I

Calleasha Bradley was a tenant at Parkside Commons, a federally-subsidized apartment complex in Syracuse. Defendant, who did not live in the complex, was the father of Bradley's child. Bradley and defendant met with Nicole Smith, the Parkside Commons property manager, and asked her to allow defendant to come on the property to visit his son. After verifying that defendant had not "had any trouble" for a period of about two years, Smith gave him permission to visit, but warned him that, because of a "no loitering policy," defendant "would need to be with his son, not at various points of the property doing other things."

On April 28, 2009, James Quatrone and Todd Hood, police officers patrolling Parkside Commons, saw defendant and three other adults in the lobby of one of the buildings, with a marijuana cigarette in the vicinity. The officers arrested defendant for trespassing. Bradley was not present during the April 28

arrest, but while Quatrone was waiting with defendant for a car to the Justice Center, Bradley emerged from a building, made a video (but not audio) recording of the event on her cellphone, and expressed her unhappiness about the officers' actions in strong terms. While witnesses' recollections of what was said differ, the evidence (described in more detail below) shows conclusively, in our view, that Quatrone knew as of April 28 that defendant was on the property with Bradley's consent.

After the April 28 incident, Smith revoked the permission she had given defendant to visit his son, and informed the police that defendant was no longer allowed at Parkside Commons. Defendant nevertheless continued to enter the property, at Bradley's invitation. Quatrone arrested him twice more for trespassing, on May 12 in the lobby of another building and on May 27 in a parking lot.

The May 27 arrest led to the resisting arrest charge that is the subject of this appeal. On being told that day that he was under arrest, defendant replied: "You can't arrest me." Quatrone told defendant to turn around and tried to pull his arm behind his back; defendant tried to walk away. Quatrone grabbed him and, with the help of other officers, forcibly handcuffed him. Defendant made the handcuffing difficult by pressing his arm against the hood of a car with his body.

Defendant was charged with three counts of criminal trespass and one of resisting arrest. A jury in City Court acquitted him of the first trespass charge, relating to April 28, but convicted him on the remaining counts.

County Court reversed defendant's convictions for trespass, but affirmed the resisting arrest conviction. In County Court's view, defendant could not be a trespasser because he was Bradley's invited guest: "[A] tenant with a lease to a specific apartment in an apartment complex has the inherent right to invite guests and . . . those guests . . . are licensed and privileged to be in or upon the property" (internal quotation marks omitted). County Court concluded, however, that Quatrone had probable cause to arrest defendant and that therefore the resisting arrest conviction was valid.

A Judge of this Court granted defendant leave to appeal (*People v Finch*, 20 NY3d 986 [2012]). The People cross-moved for leave to appeal from the reversal of the trespass convictions, but the cross motion was dismissed as untimely (20 NY3d 1098 [2013]), and the resisting arrest conviction is therefore the only

one before us. We agree with defendant that the evidence is insufficient to support that conviction, and we reverse.

## II

■ Before reaching the merits, we must decide whether defendant has preserved for appeal his argument that Quatrone lacked probable cause to arrest him for trespass on May 27 because Quatrone knew that Bradley had invited defendant to be on the premises. We hold that the argument is preserved.

Defendant made that argument at virtually the earliest possible moment—at arraignment in City Court on one of the criminal trespass charges. Challenging the sufficiency of the accusatory instrument, defendant argued that the police failed "to understand why somebody might be there . . . who might have license to be there by the tenants." Later in the same proceeding, he argued that the court "should dismiss" the charge unless defendant had been excluded "in compliance with [Bradley's] rights as tenant." He added that the court should be "even more skeptical" of the case because "this woman who lives in that, saying he's got a right to be there . . . should be good enough. Who's got a right to say that he can't be there? It's her premises. She's entitled to have guests and family members there."

The City Court Judge responded by specifically rejecting the view that Bradley could consent, over management's objection, to defendant's presence: "What the law says is . . . either she makes her peace with the management or she moves out . . . if she said, 'I want to have this person here because he's the father of my child,' she makes her peace with the management." Unlike our dissenting colleagues (*see* dissenting op of Abdus-Salaam, J. at 429-430 [hereafter, the dissent]), we do not read this ruling as being directed solely to the conditions of pretrial release; the ruling followed only moments after defense counsel's request: "you should dismiss." But the more important point is that City Court ruled definitively on the legal argument that defendant makes on this appeal. Having received an adverse ruling, defendant did not specifically urge the same theory again in support of his motion to dismiss for insufficiency of the evidence at trial. But he did not have to: once is enough (*People v Mahboubian*, 74 NY2d 174, 188 [1989] [insufficiency claim preserved by pretrial motions, "even though defendants did not specifically seek dismissal on that basis at the close of the People's evidence"]).

As a general matter, a lawyer is not required, in order to preserve a point, to repeat an argument that the court has definitively rejected (*People v Jean-Baptiste*, 11 NY3d 539, 544 [2008] [having made a specific motion to dismiss for legal insufficiency, defendant was not required to make the same point as an exception to the charge]; *People v Payne*, 3 NY3d 266, 273 [2004] ["We decline to . . . elevate preservation to a formality that would bar an appeal even though the trial court . . . had a full opportunity to review the issue in question"]). When a court rules, a litigant is entitled to take the court at its word. Contrary to what the dissent appears to suggest, a defendant is not required to repeat an argument whenever there is a new proceeding or a new judge.

It is true that a challenge to the sufficiency of the accusatory instrument at arraignment is conceptually different from a challenge based on the proof at trial, and that often an issue decided in one proceeding will not be the same as the issue presented in another. But here the issue was the same. It is also true that defendant's initial argument was addressed to a trespass count and not the probable cause element of the resisting arrest count. But once the court held that an invited guest whose license has been withdrawn by management is a trespasser, it necessarily followed that Quatrone did not lack probable cause to arrest defendant for trespass on the ground that he was an invited guest. The dissent's contrary view rests on a simple confusion. Of course the court's pretrial ruling could not resolve every aspect of "the fact-intensive issue of probable cause" (dissent at 431), and we do not suggest that it did. Our point is simply that the trial court could not, without abandoning the ruling it had already made, have accepted the specific argument that, in the dissent's view, defendant should have repeated when moving to dismiss the count at trial. It is clear to us that the repetition would have been an unnecessary ritual, and nothing the dissent says persuades us otherwise.

The dissent also points to the seeming oddity that defendant preserved the argument on which we now hold his arrest unlawful "weeks before [the arrest] happened" (dissent at 418). But there is nothing really odd about it. The resisting arrest count was properly joined with, and tried with, the three trespass counts, and the identical argument was applicable to all four counts. Neither authority nor common sense gives any support to the idea that in such a situation a defendant must, to preserve an already rejected argument, make it again whenever a new

count (whether based on earlier or later events) is added. Not even the dissent goes that far; the dissent asserts not that the argument we find preserved was addressed to the wrong counts, but that it was made at the wrong time—before trial, not during trial. We have explained why we disagree.

The dissent relies on two of our precedents, *People v Gray* (86 NY2d 10 [1995]) and *People v Hines* (97 NY2d 56 [2001]), both of which deal with the need to preserve insufficiency claims by a trial motion to dismiss. Neither of those cases addresses the precise issue here—whether a sufficiency argument specifically made and rejected before trial must be repeated at trial. This case does not require us to reconsider either *Gray* or *Hines*, and we do not do so, but we decline to read those cases as broadly as the dissent does.

We held in *Gray* "that where a defendant seeks to argue on appeal . . . that the People have failed to establish the defendant's knowledge of the weight of drugs, preservation of that contention is required by an appropriate objection" (86 NY2d at 18 [footnote omitted]). We further held that an "appropriate objection" meant one that specifically identified the flaw in the People's proof. Thus a general motion to dismiss that did not specifically raise the knowledge-of-the-weight issue was inadequate to preserve it. We explained that this requirement enables trial courts to avoid error, and also alerts the People to the claimed deficiency in the proof, thus giving them a chance to correct it and so advance "the truth-seeking purpose of the trial" (*id.* at 21).

We do not retreat from—indeed, we reaffirm—*Gray*'s statement of the importance of, and the reasons for, the preservation rule. Nor do we doubt that a specific claim of insufficiency was properly required in *Gray*, and is required in most other cases. This does not imply, however, that a specific objection in a trial motion to dismiss is always necessary where, as is true in this case, such a requirement will not significantly advance the purposes for which the preservation rule was designed. There will be cases, of which this is one, where the lack of a specific motion has caused no prejudice to the People and no interference with the swift and orderly course of justice.

Insistence on specificity in a dismissal motion is amply justified where the People might have cured the problem if their attention had been called to it. This may well have been true in

*Gray* itself; if the defendant there had flagged the knowledge-of-narcotic-weight issue, the People might have reopened their case to supply the missing proof. The specificity requirement is also justified in another class of cases—those involving alternative grounds for criminal liability, where a defendant's failure to point out a flaw may lead to his conviction on an unsound theory, though a sound one was available. Thus in considering the appeals of defendants convicted of depraved indifference murder before our cases drew a clear distinction between that crime and intentional murder, we have enforced the rule of *Gray* strictly, mindful of the possibility that a less strict approach could benefit defendants "who committed vicious crimes but who may have been charged and convicted under the wrong section of the statute" (*People v Martinez*, 20 NY3d 971, 977 [2012, Smith, J., concurring], quoting *People v Suarez*, 6 NY3d 202, 217 [2005, G.B. Smith, Rosenblatt and R.S. Smith, JJ., concurring]; *see also People v Jean-Baptiste*, 11 NY3d 539, 542 [2008]; *People v Hawkins*, 11 NY3d 484 [2008]).

But while the rule of *Gray* is generally a sound one, an overbroad application of it would raise the disturbing possibility that factually innocent defendants will suffer criminal punishment for no good reason. Thus in this case, it seems highly likely not merely that the People failed to prove defendant guilty of criminal trespass and resisting arrest, but that he was actually innocent of those crimes. As we explain below, no one now disputes that Bradley had a right to invite defendant onto the Parkside Commons property as her guest, unless some special factor, such as a lease provision or regulation, deprived her of that right. The People produced no evidence that any such lease provision or regulation existed, and that omission could hardly have been an oversight—defendant asserted a defense based on his status as Bradley's guest at the very outset of the case, and also emphasized the point during the presentation of evidence at trial, though he did not specifically repeat it at trial in his dismissal motion. There is no reason to think that the absence of that repetition prejudiced the People at all; the People assert no such prejudice—indeed, they do not advance here the preservation argument that the dissent adopts. If we were to agree with the dissent that *Gray* requires us to affirm in this case, we would in all likelihood be upholding the conviction of an innocent man, without significantly advancing any valid purpose.

The dissent responds by saying, essentially, that procedural rules do sometimes require us to uphold convictions of people

who may be innocent, and that the task of avoiding such injustices must sometimes be left to the Appellate Division, which has interest-of-justice jurisdiction (dissent at 435-436). True enough; but procedural rules should be so designed as to keep unjust results to a minimum. We think our interpretation of *Gray* serves that end better than the dissent's.

In *Hines,* we said that a defendant who had made a specific motion to dismiss at the close of the People's case, and had thereafter called witnesses and testified in his own behalf, had not preserved the argument that he specifically made because he did not make another motion to dismiss for insufficiency at the close of all the evidence. Judge George Bundy Smith, the author of *Gray*, dissented from this conclusion, asserting that "[s]ince defendant raised the sufficiency issue at the close of the People's case, he can raise it again on an appeal" (97 NY2d at 66 [Smith, J., dissenting]). Another Judge Smith, the author of the present opinion, has twice expressed doubt that *Hines* was correctly decided (*see Payne*, 3 NY3d at 273 [R.S. Smith, J., concurring]; *People v Kolupa*, 13 NY3d 786, 787 [2009, Smith, J., concurring]; *see also People v Santiago*, 22 NY3d 740 [2014] [mentioning, but not addressing, an argument that *Hines* should be overruled]). But we need not consider now these criticisms of the *Hines* result. We hold only that *Hines* does not establish a general rule that every argument once made and rejected must be repeated at every possible opportunity. Specifically, the argument that defendant here made at arraignment did not need to be repeated in his trial motion to dismiss.

## III

■ On this appeal, the People do not challenge County Court's conclusion that defendant, having been invited onto the Parkside Commons premises by Bradley, was not a trespasser, but do argue that there is sufficient evidence that he committed the crime of resisting arrest on May 27. A person commits resisting arrest when he "intentionally prevents or attempts to prevent a police officer . . . from effecting an authorized arrest" (Penal Law § 205.30). An arrest is "authorized" if, but only if, it "was premised on probable cause" (*People v Jensen*, 86 NY2d 248, 253 [1995]; *see People v Peacock*, 68 NY2d 675, 676-677 [1986]). Thus the merits question before us is whether, on the assumption that defendant was in fact innocent of criminal trespass, there was nevertheless sufficient evidence for a jury to find, beyond a reasonable doubt, that Quatrone had probable cause on

May 27 to believe him guilty of that crime. We conclude that the evidence of probable cause was insufficient.

It is critical to our holding that on April 28—a month before the arrest now in issue—defendant's status as Bradley's guest, and his and Bradley's claim that he was therefore entitled to enter the property, were forcefully brought to Quatrone's attention. The April 28 arrest caused Bradley to come out of her building, "yelling" in Quatrone's description, "screaming" in that of Quatrone's fellow officer Hood. Hood was asked if Bradley was screaming "You can't arrest him. He's my guest. Why are you arresting him? He's not trespassing." Hood disputed the words, but not the substance: "No. It was much more obscene than that."

Quatrone did not recall being told on April 28 that defendant claimed to be Bradley's guest though he admitted that defendant claimed to be watching his son two weeks later, on May 12—a rather clear indication that he claimed to be there with the approval of the child's mother. But in light of the undisputed fact, reflected in a video recording, that Bradley enthusiastically espoused defendant's cause in Quatrone's presence, we do not see how a jury could find, beyond a reasonable doubt, that Quatrone did not know on April 28 that defendant was present with Bradley's consent. And if Quatrone knew that on April 28 (or on May 12), he could readily have inferred that the same was true when he arrested defendant again on May 27. Thus the May 27 arrest lacked probable cause.

In so holding, we do not adopt any universal rule applicable to encounters between police officers and people they believe to be trespassers in public housing projects. The question of when nonresidents of public housing may be treated as trespassers is complicated (*see generally* Elena Goldstein, *Kept Out: Responding to Public Housing No-Trespass Policies*, 38 Harv CR-CL L Rev 215 [2003]). The rule relied on by County Court, that one who has been invited by a tenant cannot be a trespasser, may be generally correct, but it is not immutable. A lease provision or regulation might permit management, at least in some circumstances, to override a tenant's wishes.

Here, there is no evidence that any relevant lease term or regulatory provision existed; but we do not hold that even where that is true, a trespassing arrest of someone who claims to be a tenant's guest necessarily lacks probable cause. An arresting officer should not generally be required to consult the lease or

regulations before acting. An officer need not "conduct a mini-trial" before making an arrest (*Brodnicki v City of Omaha*, 75 F3d 1261, 1264 [8th Cir 1996]). In many situations an officer may be justified in accepting without independent verification a property manager's assertion that management is entitled to decide who may enter the property. Under the circumstances of this case, however, where both the facts showing defendant not to be a trespasser and their legal significance had been pointed out to Quatrone a month earlier, he was not so justified.

Accordingly, the order of County Court, insofar as appealed from, should be reversed and the information dismissed.

ABDUS-SALAAM, J. (dissenting). On this appeal, defendant maintains that the People failed to adduce sufficient trial evidence showing that he unlawfully resisted a valid arrest supported by probable cause to believe he was trespassing. More particularly, defendant urges, the trial evidence did not establish that the landlord of the residence of his girlfriend, Calleasha Bradley, had the authority to extinguish the license defendant had received from her to remain on the premises, and therefore the landlord's order to remove defendant from the property could not have reasonably caused the police to suspect him of trespass when they conducted the third trespass arrest at issue in this case. However, at trial, defendant did not attack the legal sufficiency of the evidence on that basis, and thus he failed to preserve his claim for this Court's review.

Nonetheless, the majority maintains that defendant preserved his legal sufficiency claim (*see* majority op at 412-415). Central to the majority's opinion in this regard is defendant's argument at an arraignment on charges other than those that resulted in defendant's trial and conviction for resisting arrest. Significantly, at the time defendant made the objection cited by the majority, the incident that led to the disputed conviction here had not even occurred yet. In other words, the majority concludes that, by challenging at arraignment the facial sufficiency of an information charging trespass based on an *earlier* occurrence, defendant successfully challenged the legal sufficiency of the trial evidence, which had not been presented at the time of the objection, at a *future* trial on a *distinct* resisting arrest charge, which had not yet been filed, arising from actions that defendant would not take until two weeks *after* the objection. Thus, the majority seems to believe that defendant specifically argued that his future arrest would be unlawful, and that he would be blameless for resisting it, weeks before it happened.

Is the majority seriously suggesting that trespass arrestees are blessed with such precognition?

Sadly, the majority displays nothing remotely similar to the foresight it attributes to defendant, for its resolution of this case is so patently inconsistent with precedent and common sense that it can only be viewed as the odd outcome of an even odder case. Given the many fatal flaws infecting the majority's opinion, which are set forth in detail below, I do not subscribe to the majority's time-bending and obfuscatory approach. Accordingly, I dissent and would affirm on the ground of lack of preservation without reaching the merits.

## I

On April 28, 2009, defendant was arrested for trespassing at Parkside Commons, which was the development containing Bradley's building. The next day, the People filed a misdemeanor information charging defendant with criminal trespass in the third degree (*see* Penal Law § 140.10 [a]), and they attached a supporting deposition completed by the property manager of Parkside Commons, Nicole Smith, in which she averred that she had given the police the right to arrest anyone who had no lawful business on the property or had been previously warned to refrain from trespassing there. That same day, a judge arraigned defendant on the information. At that arraignment, defense counsel asserted that the information was invalid because it did not state that the officers had inquired as to whether defendant had a right to be on the premises, and counsel complained that the police had arrested defendant merely because he was not carrying some unspecified paperwork previously provided to him by the judge. Noting that it was "just talking about this, this accusatory instrument right, right now," the arraignment court initially indicated that it was inclined to require the People to allege that defendant was not on the premises by permission of a resident, but the court ultimately did not follow up on this issue.

On May 12, 2009, defendant was arrested as a result of a new incident of trespassing at Parkside Commons. The next day, defendant was arraigned, by the same judge who had presided over his arraignment in his prior trespass case, on a misdemeanor information charging him with third-degree trespass and including Smith's affidavit. At the arraignment on this second of what would eventually be three trespass cases, defense

counsel asserted that the information did not comply with the CPL's verification provisions (*see* CPL 100.30 [1]), and he added that the supporting document filled out by Smith "d[id]n't work to give the police officers the ability to understand why somebody might be there" at the development where Bradley lived. Bradley, who was in the courtroom, commented that the police had arrested defendant even though he had been visiting his son and had keys to Bradley's apartment.

After discussing the verification issue, the court granted defendant pretrial release on the condition that he not return to Bradley's development. In response, counsel objected to that release condition, saying it was unfair because Smith's supporting deposition was stale and did not show that the landlord had excluded defendant from the subject premises "in compliance with [Bradley's] rights as a tenant." The court replied that the release condition was fair and did not unduly limit defendant's ability to see his child because Bradley might be able to negotiate with the landlord to allow defendant to come onto the premises.

On May 27, 2009, roughly two weeks after defendant's second arrest and arraignment, he was arrested for trespassing and resisting arrest at Parkside Commons. The People filed an information charging defendant with criminal trespass in the third degree and, for the first time, resisting arrest (*see* Penal Law § 205.30). The information consisted of sparse allegations regarding defendant's struggle with a police officer during defendant's third arrest for trespassing at Parkside Commons, and the People once more attached Smith's affidavit to the accusatory instrument. Defendant filed a written motion to dismiss the information for failure to state a prima facie case of resisting arrest (*see* CPL 100.40, 170.30 [1] [a]; 170.35 [1] [a]), generally challenging the lawfulness of the arrest.

On May 28, 2009, a new judge arraigned defendant on this latest information. The court told defendant to stay away from Parkside Commons, and defendant replied that he wished to visit his child there. The court informed defendant that he should "take something with [him] that sa[id] [his] kids live[d] there" and that he "better talk to [his] attorney about it." Neither defendant nor the court discussed whether defendant's third arrest was supported by probable cause, the validity of the charges generally, or defendant's statements at his prior court appearances on the previously filed charges arising from his first and second arrests. After the arraignment pertaining to defendant's third arrest, defendant's three cases were joined for

trial because the same individuals witnessed the relevant events in each of defendant's three cases and the evidence of defendant's history of trespassing was relevant to all three cases.

In comparison to the misdemeanor information charging defendant with resisting arrest, the trial testimony revealed far more about Smith's authority and her interactions with the police officers who patrolled Parkside Commons. Smith testified that, as the property manager of Parkside Commons, she was responsible for evicting tenants, enforcing the rules and regulations in their leases, and "prevent[ing] people from coming on the property who ha[d] no purpose for being there." Parkside Commons had a broad anti-loitering policy, and tenants' guests could enter and remain on the property only "[a]s long as they are with who they are suppose[d] to be with." The landlord employed Syracuse police officers to patrol the development, and Smith authorized them to arrest trespassers and other violators of the anti-loitering policy. On the landlord's behalf, Smith regularly identified for the officers individuals who were to be removed from the property. In the exercise of those duties and powers, Smith explained the anti-loitering policy to defendant and Bradley, and she told them that defendant could not be on the premises unless he was accompanying his son. The officers' trial testimony further clarified their beliefs about Smith's mandate from the landlord. According to the officers, they regularly checked in with Smith at the start of their shift, and as their primary contact with the landlord, Smith routinely informed them of trespassers and other removable persons.

Defendant's trial attorney questioned the officers about their knowledge, or lack thereof, concerning defendant's status as Bradley's guest, and counsel inquired into Smith's role at the property. In addition, counsel extensively cross-examined Smith and the officers about whether Parkside Commons was sufficiently "fenced or otherwise enclosed in a manner designed to exclude intruders" as required by the third-degree trespass statute (Penal Law § 140.10 [a]). The witnesses explained that, although the development's security measures had some gaps and needed some repair, the property was largely enclosed by a fence, secured by electronic locks, and under video surveillance.

At the end of the People's case, defense counsel made a motion for a trial order of dismissal premised primarily on the open nature of the development. Counsel posited that, because the evidence showed that Parkside Commons was not completely

enclosed by a fence, defendant could not have committed third-degree trespass by entering the premises without permission (*see* Penal Law § 140.10 [a]). As counsel saw it, given their knowledge that the premises were not fully enclosed, the officers lacked probable cause to arrest defendant for third-degree trespass on each occasion on which they did so. Counsel also contended that the landlord and the officers had not adequately warned defendant that he could not be on the premises, as they had failed to provide him with written notice to that effect. The trial court denied counsel's motion, deeming the issues raised by counsel to be questions for the jury to decide.

Defendant testified and also called Bradley to the stand. In their telling, Smith had informed defendant that he could be at Parkside Commons. However, Smith had declined to give defendant written permission to remain on the property, and she had told defendant to try to stay inside Bradley's building, to avoid contact with the police and to "have an escort with [him]" when wandering the grounds. Defendant and Bradley also testified that the police officers had known of defendant's alleged license to be on the premises and yet had still arrested defendant for trespass. Following this additional description of Smith's role in this case, defense counsel renewed her dismissal motion, elaborating only on the supposed lack of adequate fencing surrounding Parkside Commons. The court denied the renewed motion. Subsequently, the jury deliberated on the trial evidence and convicted defendant of, inter alia, resisting arrest.

After the jury's verdict, defense counsel filed a motion to set aside the verdict pursuant to CPL 330.30. For the first time, counsel challenged the legal sufficiency of the trial evidence on the ground that Smith had only granted the police the authority to arrest trespassers and not those, such as defendant, who were invitees on the premises. Counsel further contended that Smith had not barred defendant from the property or notified him that he could not be there, and therefore the police had no basis to suspect that he was knowingly trespassing and no authority to arrest him. The court denied the CPL 330.30 motion and sentenced defendant.

## II

The preservation doctrine "frequently accounts for the disposition of criminal cases in this Court" by preventing our review of legal issues not properly framed in the nisi prius court (*People v Hawkins*, 11 NY3d 484, 491 [2008]; *see* NY Const, art VI, § 3;

CPL 470.05 [2]; *People v Kelly*, 5 NY3d 116, 119 [2005]; *People v Gray*, 86 NY2d 10, 18-20 [1995]). We have repeatedly held that in order to preserve an appellate claim that the evidence at trial was legally insufficient to support a conviction, a defendant must file a motion for a trial order of dismissal specifically directed at the same insufficiency alleged on appeal (*see People v Hines*, 97 NY2d 56, 61-62 [2001]; *People v Finger*, 95 NY2d 894, 895 [2000]; *Gray*, 86 NY2d at 18-20). Where the defendant attacks the sufficiency of the trial evidence on grounds that are specific, but not the same as the ones later raised on appeal, the defendant fails to preserve his or her appellate contention (*see People v Carncross*, 14 NY3d 319, 324-325 [2010]; *Hawkins*, 11 NY3d at 493; *People v Lawrence*, 85 NY2d 1002, 1004-1005 [1995]; *People v Cona*, 49 NY2d 26, 33 n 2 [1979]).

The timing of the defendant's objection is equally important for preservation purposes. A timely objection to the sufficiency of the trial proof must be made during trial, not before or after, because the objection "alerts all parties to alleged deficiencies in the evidence" presented at trial and "advances the truth-seeking purpose of the trial" (*Gray*, 86 NY2d at 21; *see Hawkins*, 11 NY3d at 492-493). A motion to dismiss made during trial and prior to deliberations also "advances the goal of swift and final determinations of the guilt or nonguilt of a defendant" (*Gray*, 86 NY2d at 21).

As the trial unfolds and new evidence sheds light on the subject of a previous objection, the defendant naturally must apprise the court of any complaints about the new proof to the extent it bears on his or her prior argument. To that end, if the defendant makes a sufficiently specific objection to the legal sufficiency of the trial evidence at the close of the People's case, the defendant must still move to dismiss at the end of the defense case to preserve his or her legal sufficiency claim (*see People v Kolupa*, 13 NY3d 786, 787 [2009]; *Hines*, 97 NY2d at 61). A similar concept applies to legal sufficiency claims post-trial; where the defendant makes the relevant assertion with the requisite specificity for the first time in a CPL 330.30 motion, the defendant fails to preserve his or her legal sufficiency claim, notwithstanding that the defendant has finally brought his or her trial-level and appellate arguments into proper alignment (*see Hines*, 97 NY2d at 61; *see also People v Johnson*, 92 NY2d 976, 978 [1998]; *see generally People v Davidson*, 98 NY2d 738, 739-740 [2002]). Our insistence that the defendant object to the legal sufficiency of the evidence at a particular time and

procedural stage comports with our recognition that, generally, "[t]he purposes and requirements of the preservation rules are not satisfied by intertwining and piggy-backing distinct procedural steps of the criminal proceeding" (*People v Russell*, 71 NY2d 1016, 1017 [1988]).

Here, defendant did not preserve his claim that, because there was no evidence that Bradley's lease allowed the landlord to exile him from the property once Bradley had permitted him to stay there, the police could not have reasonably relied upon Smith's objections to defendant's presence on the property to arrest him. In that regard, even charitably construed, defendant's motion for a trial order of dismissal included the following propositions: (1) defendant had legitimately entered the buildings and common areas of Parkside Commons because the fence did not completely exclude the public from wandering onto the premises; (2) the police had no good faith basis to arrest defendant because they knew that the fence did not surround the whole property; (3) Nicole Smith had not in fact told defendant or the police that defendant could not stay on the property; and (4) Smith and the police had not adequately notified defendant that he was prohibited from coming to Parkside Commons. Defendant made no legal argument about tenants' rights at trial.

By contrast, defendant now claims that the People failed to prove the legitimacy of the landlord's and the officers' orders that defendant stay away from the premises because "[t]hey never produced the lease or showed any reservation of the landlord's right to extinguish or curtail the tenant's right to grant license," and that consequently the police officers had no reasonable cause to arrest defendant for trespassing in violation of a proper exclusion order from the landlord. In other words, below, defendant contested, at most, whether Smith and the police had provided him with adequate *notice* to justify an arrest, whereas now he disputes that Smith had adequate *authority* to tell him to stay off the property, regardless of the sufficiency of any notice. Thus, defendant did not raise his current challenge to the sufficiency of the evidence in his motion for a trial order of dismissal, and his claim is unpreserved (*see Carncross*, 14 NY3d at 324-325; *Hawkins*, 11 NY3d at 493). Of course, since he did not adequately preserve his claim at trial, defendant's motion to set aside the verdict pursuant to CPL 330.30 was ineffective in curing that preservation failure (*see Hines*, 97 NY2d at 61).

Contrary to the majority's contention, defendant's arguments at arraignment on trespass charges arising from his *second*

arrest did not preserve his current legal sufficiency claim with respect to the evidence that he unlawfully resisted his *third* arrest. For, even had defendant made these arguments at the arraignment on the charges related to the third arrest, his legal sufficiency claim would not be preserved. As noted above, a defendant can preserve a challenge to the legal sufficiency of the trial evidence only if he or she raises it in support of a motion for a trial order of dismissal, and we have never held that a defendant's other motions, whether made pre- or posttrial, present to this Court a question of law as to sufficiency of the trial evidence supporting the conviction. Indeed, as a matter of logic, if a defendant fails to preserve a legal sufficiency claim when he or she initially moves for a trial order of dismissal on specific grounds but does not later renew that motion at the end of the defense case (*see Hines*, 97 NY2d at 61-62), the defendant just as surely fails to preserve such a claim when the defendant fails to challenge the legal sufficiency of the trial evidence for reasons similar to those for which he previously assailed the accusatory instrument. In both cases, the defendant's failure at trial to redirect his or her argument to the proof later challenged on appeal is fatal to our review.

Notably, a challenge to the facial sufficiency of the accusatory instrument, such as the one defendant made below, cannot be equated with a claim that the trial evidence is insufficient to support a conviction. In moving to dismiss an accusatory instrument before trial, a defendant asserts that the pleadings, even if true, would be insufficient to allege a prima facie case of the relevant offense and provide reasonable cause to believe that the defendant had committed it (*see generally People v Dreyden*, 15 NY3d 100, 102-104 [2010]; *People v Kalin*, 12 NY3d 225, 228-232 [2009]). In making that motion, the defendant does *not*, however, necessarily alert the trial court to the distinct claim that the trial evidence is legally insufficient to support a finding of guilt beyond a reasonable doubt (*see generally People v Danielson*, 9 NY3d 342, 349 [2007]).

Indeed, the defendant cannot make such a claim prior to trial because he or she does not know the exact nature of the People's forthcoming proof at trial and cannot specifically identify any shortcoming in that evidence. The defendant's arguments in support of a pretrial motion to dismiss the information may be rendered frivolous or moot by developments in the proof at trial. If the defendant does not explain to the court whether

some variation of his or her prior complaint about the accusatory instrument applies to the newly adduced trial evidence or why the trial evidence is not sufficient to address the defendant's concerns, the court lacks specific knowledge of the defendant's potential claim of trial error. In the absence of such knowledge, the trial court cannot address the deficiency in the evidence subsequently alleged on appeal, as the defendant has never uttered a word about the legal impact of the witnesses' testimony and the trial exhibits on the issues he or she raised before trial. Thus, the primary rationales for the preservation doctrine, namely the complete development of the defendant's claim and the swift determination of guilt or non-guilt, would be undermined were appellate review permitted under such circumstances (*see Hawkins*, 11 NY3d at 492).

This case illustrates the point. At the time defendant filed his written motion to dismiss the information charging him with resisting his third arrest, he challenged only bare-boned allegations surrounding his arrest. The arraignment court decided only the legal significance of those averments and nothing else. Later, at trial before a different judge, the trial court heard Smith's and the officers' testimony detailing the landlord's regulations applicable to all tenants, Smith's power to enforce those regulations and other lease provisions, and her representation of her authority to the police. Once that additional information came out at trial, the new judge had no way of knowing whether defendant wanted to argue that such evidence did not establish the officers' reasonable belief that Smith had validly ordered defendant's removal from the property, whether defendant thought that any issues he had raised pretrial were now moot in light of the trial proof, or whether defendant simply preferred to have the jury decide his fate without making a potentially losing legal sufficiency claim. Given that defendant never marshaled the trial evidence, or lack thereof, to allow the court to make an informed decision at a time when it could have most readily prevented a conviction founded on purportedly insufficient evidence, the court was deprived of the opportunity to "advanc[e] both the truth-seeking purpose of the trial and the goal of swift and final determination of guilt or nonguilt of . . . defendant" (*Hawkins*, 11 NY3d at 492).

Moreover, by insisting that defendant should have attacked the sufficiency of the trial evidence by elaborating on his generalized pretrial motion challenging the adequacy of the information's allegations regarding the lawfulness of the arrest,

I do not suggest that he was compelled to repeat the same objection ad nauseam after the trial court had rejected it. Certainly, defendant did not have to reargue his prior complaints about the adequacy of the *accusatory instruments* arising from his second and third arrests. However, he was required to contest the adequacy of the *trial evidence* that he unlawfully resisted his third arrest for the first time if he wished to challenge the evidence as legally insufficient on appeal (*cf. People v Jean-Baptiste*, 11 NY3d 539, 544 [2008] [where the defendant made a specific motion for a trial order of dismissal in compliance with the traditional preservation doctrine, he did not have to attack the jury instructions on similar grounds as he was not challenging the instructions]; *People v Mahboubian*, 74 NY2d 174, 188 [1989] [in a case which predated the *Gray/Lawrence/Hines* framework that requires a timely and specific trial motion of dismissal and that holds CPL 330.30 motions to be inadequate to preserve legal sufficiency claims, defendant preserved a claim that the allegations in the indictment, even if true, could not possibly constitute the charged crimes, as he not only made a pretrial motion to dismiss the indictment on that ground, but also raised the issue during and after trial by: (1) requesting jury instructions based on a similar theory; and (2) making a particularized CPL 330.30 motion that, according to the record, the trial court treated as a proper motion to dismiss for insufficiency of the evidence]).[1]

In any event, even if defendant could have preserved his present claim by raising it in a pretrial motion, he did not move to dismiss the accusatory instrument charging him with resisting arrest on the grounds he now advances. First, it must be

---

**1.** Significantly, we have pronounced a similar requirement for evidentiary objections, rejecting the notion that a defendant's pretrial objection to the admission of evidence can preserve the grounds for those objections for appellate review in the absence of a renewal of the objection during trial (*see People v Middleton*, 54 NY2d 42, 49 [1981] ["(A) defendant may not, having failed to object to the admission of evidence on Fourth Amendment grounds, point to the fact that the issue had been raised in some other context earlier in the proceeding as preserving the evidence question"]). Along those lines, there is Appellate Division precedent holding that a pretrial motion to dismiss the indictment does not preserve a claim that the trial evidence was legally insufficient to support a conviction (*see People v Dowdell*, 89 AD3d 1430, 1430 [4th Dept 2011], *lv denied* 18 NY3d 923 [2012]; *People v Casiano*, 40 AD3d 528, 529-530 [1st Dept 2007], *lv denied* 9 NY3d 990 [2007]). In addition to the logic of our preservation precedent in the legal sufficiency context, these authorities persuade me that a pretrial motion to dismiss a misdemeanor information cannot preserve an attack on the sufficiency of the trial evidence.

emphasized that defendant never argued, either before or during trial, that his third arrest was not supported by probable cause because the landlord had no authority to have him removed from Parkside Commons. In his written pretrial motion to dismiss the information, defendant generally alleged that the resisting arrest charge could not stand because it was premised on an arrest unsupported by probable cause to believe he was a trespasser. And, at arraignment on the charges which led to defendant's resisting arrest conviction for trying to forestall his third arrest, defense counsel voiced no complaint about the landlord's authority to exclude him from the premises in disregard of Bradley's invitation. As discussed, at trial, the defense advanced no theory of tenants' rights whatsoever. Thus, defendant never even challenged the accusatory instrument on the basis he presently urges, much less asserted his current claim in a motion for a trial order of dismissal.

As for defense counsel's arguments at arraignment in defendant's second case, counsel mostly contended that the accusatory instrument had to be dismissed due to lack of proper verification, and he merely added that Smith had not adequately informed the officers of the reasons for defendant's exclusion from the property. The only point at which counsel challenged Smith's authority to throw defendant out of Parkside Commons came not in the course of his request to have the information dismissed, but rather in response to the court's separate directive that defendant stay away from the property as a condition of his pretrial release. Thus, defendant never successfully asserted that the information in his second trespass case was facially insufficient based on the absence of sworn allegations of Smith's authority under the lease, nor did he contest the legal sufficiency of the trial evidence on that basis.

In short, the trial judge was *never* alerted to any deficiency in the proof and had no practical opportunity to grant defendant the relief he now seeks; in fact, had the judge reviewed the pretrial proceedings regarding each of the three informations, he would not have discovered any property rights claim related to defendant's third arrest or to the probable cause element of the resisting arrest charge. Therefore, defendant's current claim is unpreserved.

### III

The majority concedes that defendant's motion for a trial order of dismissal was inadequate to preserve his appellate claim

(*see* majority op at 412), and it also acknowledges that "a challenge to the sufficiency of the accusatory instrument at arraignment is conceptually different from a challenge based on the proof at trial, and that often an issue decided in one [context] will not be the same as the issue presented in another" (*id.* at 413). Additionally, notwithstanding the majority's glossing over the timing of defense counsel's pretrial arguments and the order of relevant events (*see id.* at 412), even the majority does not pretend that the trial judge actually knew of defendant's current legal sufficiency claim or had an opportunity to address it in any way.

Nonetheless, the majority posits that defendant's pretrial motion relating to his *second* arrest preserved the issue of whether the trial proof was legally sufficient to show that the arresting officer reasonably believed that the landlord had the right to exclude defendant from the premises during his *third* arrest (*see id.* at 412-413). However, for the reasons stated in detail above, this conclusion is flawed because: (1) defendant failed to make any tenants' rights objection whatsoever to the charges or trial evidence pertaining to his third arrest, which had not occurred at the time he made the argument cited by the majority; (2) defendant drew the *arraignment court's* attention to his pretrial arguments in his second case, not the *trial court's*; and (3) in those pretrial arguments, defendant raised a different issue regarding the pleadings and his release conditions, not the issue he now raises regarding the trial evidence.

By quoting the judge at the second arraignment as saying, "[W]hat the law says is . . . either she makes her peace with the management or she moves out" (*id.* at 412), the majority presumably means to indicate that the arraigning judge held, as a matter of law, that a landlord's command always governs a person's access to the property, notwithstanding a tenant's invitation. And, so the argument must go, there was no need for defendant to alert the new judge at trial to this issue because, after the proclamation of that judge's colleague, defendant had no reason to hope for or try to obtain a different ruling regarding the trial evidence. Leaving aside for the moment the majority's evident assumption that the trial court was required to know the precise nature of the arraignment court's oral rulings, the arraignment court did not actually make the ruling that the majority attributes to that court. Specifically, the arraignment court commented on Bradley's need to make peace with the landlord not in response to defendant's arguments in support of his motion to dismiss the accusatory instrument

pertaining to his second arrest, but rather in response to his challenge to the conditions of his pretrial release pending resolution of the trespass charge in the second information. Thus, the arraignment court ruled on "[w]hat the law says" about a defendant's need to take all available steps to comply with pretrial release conditions, not what it says with respect to the validity of criminal trespass and resisting arrest charges.

The majority seems to think that the arraignment court ruled that the evidence at trial would necessarily be legally sufficient to support a conviction for resisting arrest and trespass as long as the testimony bore out the allegations of Smith's authority contained in the accusatory instrument (*see id.* at 412). But given that a court is categorically prohibited from finding the trial evidence legally insufficient prior to trial (*see Matter of Holtzman v Goldman*, 71 NY2d 564, 568-574 [1988] [concluding that a trial court is subject to a writ of prohibition when it issues a decision concluding that the evidence is legally insufficient to support a conviction prior to trial]; *see also People v Spellman*, 233 AD2d 254, 255-256 [1st Dept 1996]), the arraignment court surely had no power to issue an order declaring that the trial evidence would be absolutely legally sufficient in advance of trial. Both defense counsel and the arraignment court must have known, then, that the court had no power to settle the issue of the necessary trial proof of the landlord's and the police's mandate, and defendant could not have "take[n] the court at its word" (majority op at 413) on that issue for purposes of trial because any "words" the court might have wasted on the sufficiency of the potential trial proof would have been utterly devoid of legal effect. By falsely portraying the arraignment court's pretrial rulings on defendant's various arguments as the functional equivalent of a pretrial ruling on the legal sufficiency of the evidence, the majority gives decisive legal and preservation effect to an imagined order entered in excess of the court's jurisdiction, thus adding to the absurdity of its misconception of the court's pretrial comments.[2]

---

2. The majority's assertion that, to "preserve an already rejected argument," a defendant need not "make it again whenever a new count (whether based on earlier or later events) is added" (majority op at 413-414), reflects the majority's misunderstanding of the record. The People did not add a new count to one of their two existing trespass prosecutions against defendant arising from his first two arrests, but instead initiated an entirely new prosecution by filing a new accusatory instrument charging defendant with trespass

Additionally, it is demonstrably false that "once the court held that an invited guest whose license has been withdrawn by management is a trespasser, it necessarily followed that Quatrone did not lack probable cause to arrest defendant for trespass on the ground that he was an invited guest" (majority op at 413). After all, a police officer may lack probable cause to arrest a defendant even if it later turns out that the defendant committed the crime for which he or she was arrested (*see e.g. People v De Bour*, 40 NY2d 210, 221-226 [1976] [holding the arrest of defendant unlawful, though it turned out that he was guilty of illegal gun possession]). Had the arraignment court endorsed the legal theory cited by the majority with respect to the second trespass prosecution against defendant, the court still could not have determined whether Officer Quatrone had probable cause to arrest defendant for trespassing a third time without learning the circumstances surrounding the third arrest, which could only have been revealed by Smith's and Quatrone's trial testimony. For, even if Smith had the absolute authority to order defendant to be removed from the premises, Quatrone's power to arrest defendant was uncertain, as it depended on his knowledge of Smith's authority, the existence of a presently active removal directive regarding defendant on May 27 and Quatrone's awareness of any such directive. Because the court's pretrial statements could not have resolved the fact-intensive issue of probable cause, the court's rejection of defendant's pretrial assertions about his second trespass prosecution could not have preserved defendant's claim that his third arrest was unlawful.[3]

Moreover, assuming the arraignment court ruled that Smith could lawfully exclude defendant from the development at the

_____

and resisting arrest on May 27. At the time defendant complained about his release conditions prior to trial, that third prosecution had not begun, and the court had not accepted or rejected any legal argument in that case.

**3.** According to the majority, "the trial court could not, without abandoning the ruling it had already made, have accepted the specific argument that, in the dissent's view, defendant should have repeated when moving to dismiss the count at trial" (majority op at 413). But, again, the "trial court" did not make any ruling on the issue of the officer's authority to arrest defendant; the arraignment court, at proceedings related to defendant's second trespass arrest, made the comments cited by the majority. And, as explained in detail above, the arraignment court did not make any ruling on the lawfulness of defendant's third arrest, much less a ruling on which defendant could have relied. Thus, had the trial court been given the opportunity to determine the sufficiency of the trial evidence for the first time at the close of the People's and defendant's cases, the trial court would not have had to abandon any prior decision issued by it or the arraignment court.

time of his second arrest, the arraignment court had no occasion to decide whether Smith still had that authority when defendant was arrested for the third time, especially since management could have changed its loitering policies or consented to defendant's presence after the second arrest. As defendant undoubtedly understood, the arraignment court discussed his release conditions and ability to come onto the property only under the circumstances as they existed at the time of his second arrest, not as they might evolve thereafter.

## IV

Given its bold declaration that this particular case is not covered by the general rule requiring a dismissal motion at trial, one might assume that the majority's opinion contains ample authority for this position. Certainly, the majority purports to comply with existing preservation precedent (*see* majority op at 413-414). However, closer examination of the majority's opinion reveals that no legal authority actually supports its finding that defendant's claim is preserved.

Take, for example, this quote from the majority's opinion, characterizing, or rather mischaracterizing, our holding in *People v Jean-Baptiste* as follows: "having made a specific motion to dismiss for legal insufficiency, defendant was not required to make the same point as an exception to the charge" (majority op at 413). This is meant to be taken as precedent, I suppose, for the notion that a defendant's assertion of a legal claim early in a proceeding necessarily preserves a related challenge to the subsequently presented trial evidence and similar complaints about all subsequent rulings or proceedings. However, *Jean-Baptiste* holds no such thing. In that case, the defendant made a specific motion to dismiss on legal sufficiency grounds at trial and, on appeal to us, raised the exact same claim to argue that reversal of his conviction was required (*see Jean-Baptiste*, 11 NY3d at 541-544). We found that the defendant had preserved his legal sufficiency claim for our review, and we merely rejected the People's claim that the defendant needed to object on the same grounds to the court's jury instructions about the elements of the crime, reasoning that the defendant had adequately objected to the proof and did not need to object to the jury instructions which he was not specifically challenging on appeal (*see id.* at 544). Clearly, then, *Jean-Baptiste* does not stand for the proposition that an objection at arraignment

on a prior charge can preserve a legal sufficiency claim with respect to a newly filed set of charges arising from a subsequent incident, where such charges happen to be consolidated with the previous charge for trial due to considerations of judicial economy.

The majority also relies on this quotation from *People v Payne*: "[w]e decline to . . . elevate preservation to a formality that would bar an appeal even though the trial court . . . had a full opportunity to review the issue in question" (majority op at 413 [quoting *People v Payne*, 3 NY3d 266, 273 (2004)]). Surely, one might think, this shows that a motion for a trial order of dismissal is a mere formality and that, as long as a judge had the chance to consider a defendant's claim somewhere along the line, the defendant need not comply with the "formal" aspects of our preservation doctrine. Right? Well, no, not really. In fact, we have never previously viewed the need for a specific and timely motion for a trial order of dismissal as a formality, and we have repeatedly disposed of cases for failure to meet that very requirement (*see e.g. Hawkins*, 11 NY3d at 493; *Gray*, 86 NY2d at 22-26; *People v Bynum*, 70 NY2d 858, 859 [1987]). As for *Payne*, the defendant in that case actually made a timely motion for a trial order of dismissal directed at the legal sufficiency of the evidence, and the court reserved decision on that motion until the close of all the evidence. Thus, defendant's motion to dismiss remained pending, and the trial court had the opportunity to decide it in light of all the trial evidence (*see Payne*, 3 NY3d at 273). Indeed, as we said in the passage from which the majority selectively quotes:

> "Where, however, the court has reserved decision, the defendant has preserved a claim of insufficiency, and the *trial court* would then rule on the CPL 290.10 motion as if the motion were made at the close of all the evidence. We decline to expand *Hines* and elevate preservation to a formality that would bar an appeal even though *the trial court, aware that the motion was pending*, had a full opportunity to review the issue in question." (*id.* [emphasis added]).

Obviously, here, no trial motion to dismiss was pending, and defendant never alerted the trial court to any legal sufficiency claim. Accordingly, notwithstanding the majority's brief references to *Payne* and *Jean-Baptiste*, the legal basis of the majority's holding remains unexplained and inexplicable.

Unable to come up with any authority to support its own opinion, the majority unconvincingly attempts to distinguish some of the cases I have cited in support of mine. For example, the majority tries to casually brush aside *People v Hines* (97 NY2d 56 [2001], *supra*), saying, *"Hines* does not establish a general rule that every argument once made and rejected must be repeated at every possible opportunity" (majority op at 416). In doing so, the majority sets up a straw man, as neither I nor the Court in *Hines* has characterized that precedent in such a manner. What *Hines* and its progeny do establish, however, is that even where the defendant timely objects to the quality of the proof during trial, he must renew that objection at the end of the presentation of all the evidence (*see Kolupa*, 13 NY3d at 787; *People v Lane*, 7 NY3d 888, 889 [2006] [defendant failed to preserve his legal sufficiency claim because "(a)fter defendant presented his own evidence, he did not renew his earlier argument"]; *Hines*, 97 NY2d at 61). It follows that, if a defendant cannot preserve a legal sufficiency claim by objecting at an "earl[y] . . . moment" (majority op at 412) at trial without renewing that same objection later, he or she surely cannot preserve such a claim by objecting to an accusatory instrument in an earlier case without redirecting that argument toward the trial evidence regarding a subsequent crime at least once—not at "every possible opportunity" (*id.* at 416)—at the close of the evidence at the consolidated trial encompassing the earlier case and the later one.

The majority spends the rest of its discussion of *Hines* recounting oft-rejected criticisms leveled at that precedent by the author of the majority opinion (*see* majority op at 416). However, the majority wisely retreats from any modification or overruling of *Hines*, presumably in acknowledgment of its stare decisis effect and the reliance placed upon it by the trial courts (*see* majority op at 414). At the very least, the majority seems to recognize that it has no basis to alter *Hines* because no party to this litigation has asked us to take that step or even to read *Hines* in the mistaken way the majority now does.

Strangely, the majority claims to "reaffirm" *People v Gray* (86 NY2d 10 [1995], *supra*), and its "statement of the importance of, and the reasons for, the preservation rule" (majority op at 414), but the majority then immediately relies on matters of policy to sidestep that precedent, which is so clearly fatal to its analysis (*see id.* at 415). None of the policy issues identified by the majority ever have, or should, exempt a case from the clear and long-standing *Gray/Bynum* rule of preservation.

For example, the majority believes that the People could not have cured the deficiency in the proof now alleged on appeal had defendant properly raised his claim below, and that consequently there is no reason to demand defendant's compliance with *Gray*'s requirement of a dismissal motion at trial (*see* majority op at 414-415). However, we have never held that the People's ability to rebut a dismissal motion with additional evidence is a prerequisite to the application of the *Gray/Bynum* rule. In *Gray*, we identified the possibility that the People might promptly address a gap in the evidence as just one of the many reasons a specific trial motion should be required in virtually all cases, and thus we observed that a focused motion for a trial order of dismissal advances the purposes of the preservation doctrine not only where the People can present more evidence, but also in cases where a particularized trial motion would enable the efficient resolution of the defendant's guilt or non-guilt, advance the truth-seeking purpose of the trial and, most importantly, "bring the claim to the *trial court*'s attention" (*Gray*, 86 NY2d at 20-21 [emphasis added]). As discussed earlier in this opinion, defendant's pretrial arguments utterly failed to advance this last goal, whereas a proper motion for a trial order of dismissal would have done so. In relying so heavily on the alleged absence of prejudice to the People, the majority ignores the manifest unfairness its decision inflicts on the trial court, which had no knowledge of defendant's present claim, and the inefficiency of addressing the adequacy of the trial evidence for the first time on appeal rather than at trial.

The majority further urges that defendant did not have to preserve his legal sufficiency claim via a particularized and timely motion for a trial order of dismissal because he might be innocent (*see* majority op at 415). But, the majority's pronouncement is difficult to reconcile with our repeated holdings that, where a defendant is wrongfully convicted of a crime consisting of elements that could not possibly match his or her conduct, neither due process, the common law nor any statute relieves the defendant of the obligation to preserve the issue for this Court's review via a particularized motion for a trial order of dismissal (*see Gray*, 86 NY2d at 22 [rejecting claim that due process mandates review of a conviction based on legally insufficient evidence even in the absence of a specific dismissal motion at trial]; *People v Dekle*, 56 NY2d 835, 837 [1982] [concluding that due process does not exempt a defendant from the

traditional preservation rule despite the possibility that defendant did not commit the actual crime charged but rather was convicted based on the erroneous legal theory set forth in jury instructions]). If a defendant has a colorable claim of actual innocence, the intermediate appellate court has the power to review his or her unpreserved legal sufficiency claim, and thus there is no reason to excuse the defendant's preservation failure for fear that the defendant cannot obtain appellate review of the allegedly wrongful conviction (see CPL 470.15 [6] [a]; Gray, 86 NY2d at 22).

Moreover, both the majority's assumption that defendant is probably innocent and its belief that the People could not have proven otherwise are belied by the majority's own assertion that a relatively minor variation in the proof here could have sustained defendant's conviction for resisting arrest. In particular, if the majority is correct in stating that "[a] lease provision or regulation might permit management, at least in some circumstances, to override a tenant's wishes," and that an arresting police officer need not always consult a tenant's lease to eject the tenant's purported guest (majority op at 417), then upon proper notice that defendant was attacking the sufficiency of the evidence regarding the lawfulness of management's removal order and the officer's execution thereof, the People might have submitted proof that either a relevant lease provision existed or that the officer suspected it did, thus fully curing the purported deficiency in the evidence. The majority speculates that the People must not have had that proof because they did not use it to rebut defendant's pretrial complaints about his second arrest (see id. at 415). But at that stage, defendant's third arrest had not occurred, and even with respect to the trespass charges arising from his second arrest, the People heard no assertion from defendant that the absence of proof about the lease terms would render the trial evidence insufficient to support a conviction. Thus, the People had no reason to think they needed the lease or comparable evidence to put on a legally sufficient case at trial, and there is no indication in the record that they could not have met a proper dismissal motion with proof sufficient to support defendant's resisting arrest conviction. In light of the thin line the majority draws between guilt and innocence in situations such as the one defendant found himself in on May 27, it is hard to credit the majority's claim that defendant is highly likely to be innocent and that the People could not have filled the alleged gap in the proof in response to a

proper dismissal motion, and thus the majority's unsupported proclamations cannot excuse defendant's preservation failure.

## V

In sum, I conclude that we cannot review defendant's legal sufficiency claim. Accordingly, I vote to affirm the order of the County Court.

READ, J. (dissenting). From time immemorial the New York Court of Appeals has required a claim of insufficient evidence to support a criminal conviction to be preserved for appellate review by a motion to dismiss made at the close of evidence and specifically directed at the same error alleged on appeal (*see People v Hawkins*, 11 NY3d 484 [2008]; *People v Gray*, 86 NY2d 10 [1995]; *see also* Henry Cohen & Arthur Karger, Powers of the New York Court of Appeals § 199 at 748-749 [1952]). As Judge Abdus-Salaam's dissent illustrates, the way in which the majority purports to honor that principle here is downright bizarre. As a consequence, those who follow our criminal jurisprudence closely will no doubt conclude that the majority was willing to abandon preservation to reach the merits. Notably, the Court of Appeals has not traditionally been known for such expediency. I am optimistic that today's adventure in result-oriented decisionmaking will be looked upon in retrospect as an aberration, not a harbinger.

Chief Judge LIPPMAN and Judges PIGOTT and RIVERA concur with Judge SMITH; Judge ABDUS-SALAAM dissents in an opinion in which Judges GRAFFEO and READ concur; Judge READ in a separate dissenting opinion.

Order, insofar as appealed from, reversed and information dismissed.